161576. Mr. Dunner.  Good morning, and may it please the court. The district court's attorney fee ruling in this case is based on several critical legal errors. First of all, the court distinguished between common patent actions and independent actions, and what it said is very relevant. It said independent action is an uncommon action. It's an extreme litigation tactic. Under almost all circumstances, one should not reasonably expect to be able to satisfy. One which courts should try to deter by an award of attorney fees to the prevailing party. Having distinguished independent actions from conventional actions, you would have expected that the district court would have compared NOVA's conduct to other independent actions, but it did not. It compared it to what it referred to as the full panoply of patent cases, and we suggest that is clear legal error and has significant implications in this case. And what do you rely that on? I mean, we don't have much guidance from the Supreme Court on this particular precise question about whether or not we would consider this as part of the panoply of patent actions or whether this should be treated separately. So how do we know the answer to your question? How do we know it was clear legal error? The answer, I suggest, is common sense, and let me explain why. If the test for determining whether you satisfy an independent action, you have to satisfy the beggarly standard, the grave miscarriage of justice. And in order to do that, if you properly plead that, if you plead a fraud case under the grave miscarriage of justice, it will always stand out from a conventional patent case, always. And so if it always stands out from a conventional patent case, the only comparison to determine under octane fitness whether it stands out from others is to stand out from comparable cases, independent actions. Well, that may have some heft if that were all the district court said. If all the district court says is, I'm awarding attorney's fees under 285 because this was an extreme tactic, an extreme procedure, and therefore it stands out, okay. But he certainly relied, his analysis was much more fulsome looking to the reasonableness of the allegations and everything else that went on, right? So that wasn't the sole basis upon which he awarded attorney's fees. I have to turn off my hearing aid. My apologies. Other district courts, I don't know of any district court which he said what this district court said, comparing what was done in an independent action to another conventional action. So I don't know of any district court case that supports what the district court did. But he found that your allegations weren't plausible. In other words, you had a very weak case, maybe suggesting that it was frivolous. Your Honor, my answer to that is twofold. One, octane fitness, I believe our cases are cited on page 41 in the blue brief, but octane fitness basically says that the fact that you lost the case does not mean... Well, that's not what he said. He didn't say just because you lost, he just said your allegations weren't plausible. And my answer to that is, before we filed this case, we conferred with three former federal judges... So we should defer to former federal judges over what we think? Pardon? We should defer to former federal judges compared to what we think? Absolutely. That's absolutely correct, Your Honor. You are the final determiners of the case. But what we did was, in this case, we went through a pre- and post-filing action that the district court judge himself found was extraordinary. He found it was extraordinary because we wanted to make sure that what we did... The district court found that your allegations weren't plausible. If we agree with that, because you failed to allege perjury, because you failed to allege any reason to believe that the lawyers knew about it, which would be the requirements for an independent action, there's a finding there that your allegations weren't plausible. Why isn't that a basis for awarding attorney's fees? If you agree that the positions that we took, as confirmed by three former federal judges, if you agree that their positions were not plausible, that their positions were not plausible, then you can go one way rather than the other way. But the fact that the district court found that the positions were not plausible does not dictate the award of attorney fees. No, but he didn't say that it did. But it supports an award of attorney's fees. It doesn't dictate it. And my answer to that is, under the totality of circumstances test of Octane Fitness, you need to look at all of the evidence. And all the evidence included detailed statements in declarations of three former federal judges who looked at the testimony of two witnesses in other proceedings and found out that they directly contradicted the positions taken by Dow in Delaware. But that's not enough for an independent action, right? Coupled, well, it's part of what is in the independent action. Yes, if you have... It mightn't be enough for 60, rule 60, B3 relief. If we can show, and two of the judges, Judge Michelle and Judge Free, went through what the attorneys did. They tied the conduct to the attorneys. And they basically said, you had one witness, Soares, who said in Delaware that reaching results was easy. In Canada, he said he didn't, he never believed it was possible. And he said that he didn't think you could get that result. Directly contradicted one another. Yeah, but the district, let's move on from that. I mean, didn't the district court find, and I don't know whether this was before the other side responded or whatever, that even if these alleged inconsistencies existed from Louisiana and Canada, they would be immaterial to the judgment in Delaware. And if we take that as a given, or at least a non-abusive discretion, then why at least after they filed their response or their motion to dismiss, were you not obligated, if that were the view and you were now being presented with that, why at least after that should you not have closed up and walked away? To me, that determination has little to do with getting cover for what the former federal judges said earlier in time. Your Honor, I'd like to answer that in two parts. One is, when the district court judge said it's immaterial, I submit that that was a clearly erroneous finding. You had Valenzuela, who was in charge of the tax events at Dow, saying that in 2001, all of the patents were transferred to a new subsidiary, DGTI. His name was on a covering letter, which they said he knew nothing about the contribution agreement. His name was on the summary page, which had been detached from that agreement, so he obviously knew about it. And you have him basically taking a position which is inconsistent with the position taken by Dow in Delaware. The judge said that he can't look at extrinsic evidence. Well, the fact is, the supplement B, I'm having a lapse, the document that this court relied on was basically extrinsic evidence. Well, you also relied on the Kate Maxwell testimony for the B supplement document. Is it the same thing? All of the documents they relied on were post-filing of the suit, post-2005. So all I'm saying is, for the district court judge to find out that it was immaterial, that is, I submit, that is a clearly erroneous fact-finding. It had the highest degree of materiality. They said that Valenzuela said, I think that is so. He was later cross-examined during the same testimony, where he said they were all transferred. If they were all transferred, then Dow had no standing. That is totally inconsistent with their relying on the document, the B supplement document. The Surrey's testimony was not only inconsistent, it was contradictory to what he said in Delaware. If those facts are true, and those facts are set forth in detail in the declarations of the three federal judges, then I submit that the judge's finding that it was immaterial is as clearly erroneous as it can possibly be. Is the immateriality finding in this opinion or in the earlier opinion on the merits? I didn't hear you, Your Honor. Is the immateriality finding in this opinion here or the earlier opinion dealing with the merits? I don't remember. It could be in this opinion. I don't remember whether it was or not. If it was in the earlier opinion that we've already affirmed, then that's a given. It's too late to fight over that if we affirmed his determination on the merits of this case. Your Honor, again, I come back to the point. The fact that we lost on an issue does not mean that a position taken by a litigant such as Dover, such as Nova, was justified. No, I understand that, but I'm just going to your point that that was a clear, absolute error. If we've already confirmed in our earlier affirmance of the district court's dismissal of this case that he was correct in that there was no, or any alleged inconsistency wasn't probative or germane to the conclusion in Dial 1, then that fight has been fought. Your Honor, the finding that the affirmance of the earlier decision was a Rule 36 affirmance, and one cannot tell, not only is there case law sparks versus Eastman Kodak, which says that the fact that a Rule 36 issues does not mean that sanctions should be awarded. No, that's not what I'm suggesting. I'm not suggesting sanctions should be awarded because of that. I'm suggesting the fight we're having over whether or not this was material or immaterial to the conclusion in Dial 1 is one that seems to me has been likely resolved in the first case. I do not, the issuance of a Rule 36 opinion affirming the dismissal of the independent action does not indicate what the basis was for this court's affirmance. The court might have been focusing on that point. The court might have been focusing on any point. It doesn't tell us what the reasoning was of this court in terms of its affirmance. I do not know. Going back to the original opinion, there certainly was reference to the fact that there was extrinsic evidence. But all I'm telling you is it is a fact, which I think is indisputable, that the Kate Maxwell statement about Schedule B supplement was extrinsic evidence. And the court relied on that. And all I'm saying is the Valenzuela event is no more, no less extrinsic than the Kate Maxwell testimony. So, I see I'm running into my rebuttal time. Thank you. Why don't we hear from the other side. Please, the court. Mr. Hammeron, I think when you're sitting at counsel table, it would be good not to try to communicate with the court by your body language that you have disdained for the argument that Mr. Dunner is making. That was not my intent, Your Honor. Well, you were rolling your eyes and making faces. I suggest you don't do that. I really was not intending to do that, Your Honor. I apologize if that was the case. You perceive that. It was not my intention whatsoever. I do apologize for that. You thought that was the case. I mean, very serious allegations were made in the case, and I do have, I would say, a personal stake in it, but I certainly do not think that Mr. Dunner was saying something that would be something that would be decisive. Impassivity, while sitting at counsel table, is a good approach. Thank you, Your Honor. I will keep that in mind. Your Honor, may I say an interview? I cannot hear. I cannot hear. I'll say an honorific. Okay, Your Honor. Ryan's getting up here. Let me tell you the one thing that concerns me about the district court's opinion here is this notion that there were less inflammatory ways of dealing with the situation. I mean, if, in fact, there had been plausible allegation here, I'm not sure that I see that the mere filing of the independent action would be something that was inappropriate. I mean, do you agree with that? I do not agree that it wasn't appropriate for this reason, Your Honor. The district court stated that what you found was, at best, mere inconsistency. No, no, no, but you're not dealing with my hypothetical. I'm saying, hypothetically, if the allegations were plausible, and I understand he found they weren't plausible, but if the allegations were plausible, I don't understand the point about it being inflammatory to file an independent action. I don't see that that's inappropriate. Do you agree with that? I do not agree with that, Your Honor, for this reason. Why not? Because the case was still pending before the district court. The court had the supplemental damages case going at that time, and we had tried the case, and the court was considering the damages issue. So if they thought there was some plausible basis to make allegations that, at the other side of greed, were career-ending, even if plausible in some way, they could have gone to the district court and simply asked to have some discovery, limited discovery on. They said, we have new evidence outstanding, and we'd like to take some discovery on that. We have evidence that Dr. Swartz may have given inconsistent testimony that's plausible in some way. And they had no basis for election attorney involvement, but if they did have some basis for it, Your Honor, which they've never come up with, then they could have just gone to the district court, and I think that's the court's point, is that he had the case at the time. They could have just gone and said, let's take some limited discovery on this, and if something comes from it then, then they could proceed with the more full-blown motion to vacate the judgment. But they didn't do that. I'm having trouble seeing why they have to approach it that way if they have a plausible claim. There's nothing wrong, even if it's inflammatory, if you have a plausible claim. There's nothing wrong with asserting it, is there? Well, Your Honor, if you're going to make allegations of that nature, I think the better course certainly would be, to the court's point, is to go and use some other way. Yeah, but I'm unclear what the other mechanism is. What's the procedural mechanism to get relief from the prior judgment? You were time-barred from a 60B. I'm not sure I see what the other alternatives they had were. Well, Your Honor, Judge Liflin, for example, one of the former judges they talked about, said that he thought there was a potential inconsistency that should be brought to the court's attention. I think what the district court was saying is, you could have brought this to my attention. How? What's the procedural mechanism where they could have brought this to my attention? Well, since the district court had the case before, he could have simply motioned to reopen discovery and let them take some testimony on the issue of whether there was inconsistent testimony, whether there was attorney involved. What case was before him? Because we've had several incarnations of this. Wasn't it the second case? Was it really the first case? No, the second case. The second case. Which just dealt with another issue that ultimately that side prevailed on in any event. Wasn't the heart of the question the questions we were dealing with here in Dow 1? Your Honor, standing is always an issue that a court can consider at any point. So if there's no standing for the second case you called, the supplemental testimony. I don't understand what you're arguing. If they wanted to attack the first judgment that had become final and they couldn't file a Rule 60 motion, then what other way could they have done it except through this independent cause of action? Are you saying that they should have gotten some discovery first on the second case and if that had sufficient grounds then they could file the independent cause of action? Your Honor, I think given the facts here, that's the only course that would have been reasonable. In fact, is to try and get some discovery, make inquiries to see if they had a plausible basis. The district court found they did not have a plausible basis. But if they thought they had something there, they could have gone to the district court and asked for permission to take some discovery. I don't see how that judgment call in itself is sufficient for fees because ultimately they had a right to file this and they decided that they had enough. They didn't need anything else. They were wrong, but they did what they thought was due diligence. So the mere fact that they filed that without first going to the district court seems completely immaterial to me. Your Honor, the judge did not order or award fees simply because there was a failure to go to the court first to bring it to his attention. He looked at the totality of circumstances. No, I understand that, but I think we were trying to understand his argument that this was a drastic tactic and I don't see anything drastic about it. It was really their only tactic to get the first judgment undone, wasn't it? Well, I don't think it is if you have the right to go to the district court and ask for some discovery. But you just said what procedural mechanism could they have used to get that first judgment undone other than this independent cause of action? Your Honor, what they could have done is gone to the district court, asked for some discovery so they could find out if they really had a false basis. On what basis? There wasn't anything in the court. Because there's always an ability to attack standing. So the second case was pending. Attack standing once it's been determined adversely? Yes, if there's new evidence for it such that you think you might have a basis. The Rule 60 has a mechanism for that, but there's a one-year time limit. Not under Rule 60b-4, Your Honor. That does not have a one-year time limit. So they could have gone and asked for a discovery on that and attacked standing under Rule 60b-4. They didn't do that, so that would have been a mechanism for that one. Because b-4 does not have a time limit. But they didn't take that course of action. I think, Your Honor, the important point here is that— There's no mention of 60b-4 by the district court, right? No, the district court simply said you could have used less inflammatory means. And those less inflammatory means, I would submit, would be either going to the court and bring it to his attention so that he could take some discovery, which would allow them to attack— Did you mention Rule 60b-4 in your brief? I believe we did. Yes, we did. Where? Page 48. Page 48, Your Honor. The judgment was void for supposed lack of standing? Yes, Your Honor. That's a Rule 60b-4 motion. Yeah, but what case says that you could attack a standing determination that had been made on the ground that you want to relitigate what was resolved earlier? I don't understand that 60b-4 is directed for that kind of situation, nor do you, since you say it wouldn't have succeeded. We say that the case wouldn't succeed under any circumstance. If they brought it to his attention and said, we want discovery to see if Dr. Soares, in fact, was inconsistent in any way or perjured himself, we don't think that would have succeeded. We don't think any mechanism— So it sounds as though the only way they could succeed is by filing independent action. We said they wouldn't succeed in that either. In fact, that's what the district court found. It said there was no basis for them to do anything here because they didn't have any grounds to attack the judgment in any way. I mean, the district court, for example, did not just find, as counsel Smith said, this was an extreme action. What the district court did is it looked at octane fitness and said you're supposed to look at the governing law and then compare that to the proofs that are put in. The district court— Let's suppose hypothetically that we agree with you that there are grounds here, the lack of plausibility, which might have supported the award of attorney's fees, but that his reliance on this less inflammatory way supposedly available to them was wrong. What should we do? Well, Your Honor, that wouldn't make any difference. He relied on that, I understand, for saying that you litigated in an unreasonable manner. He also found their claims were exceptionally weak, and that was based on his analysis saying— Your Honor should point it out. He found that you have a very high burden, great miscarriage of justice, and that with respect to, for example, infringement, he said that it was not material to anything. So even if there had been testimony by Dr. Soares in Canada that was inconsistent, that went to something called TREP, which had nothing to do with any live issue in the U.S. proceeding. It had to do with something called weight percent. It did not have anything to do with the heterogeneity that Dr. Soares— But I guess my question is, if he relied on something which was wrong in suggesting that there was an inappropriate way of litigating this by filing the independent action instead of doing something else, who knows what that might have been, do we have to send it back to him to have him reconsider putting out of his mind the inappropriate consideration? No, Your Honor, because he had two grounds for finding that the case was exceptional. Acting Fitness said you can find it either because the claims are exceptionally weak or in the manner— Well, how do we know those are independent grounds? Does he say they're independent? Well, he says that he finds that both are present here, and that Acting Fitness says it's either— Yeah, but it also says totality of the circumstances. Right, but the court—Acting Fitness says that you can find an exceptional case if you find that the case stands out with respect to others on the substantive strength of litigating the position or the unreasonable manner in which the case was litigated. So you don't have to find both. And we know that he did that because on page 12 he says, in particular, the court finds this case is exceptional both in the substantive strength of Nova's litigating position and in the manner in which the case was litigated? That's right, Your Honor. So if that's the case, if he made something that Your Honor feels— made a statement that Your Honor feels is incorrect with respect to the ability to have brought about this alleged inconsistency to his attention, that does not impact the fact that he found that the case was exceptionally weak when you compare grave miscarriage of justice as the standard, and Acting Fitness says you look at the governing law for the claim, and the fact that they basically had zero evidence to support them. None of the former judges, by the way, addressed the fact that the alleged inconsistent testimony didn't even go to initiatives live in the original case. None of them addressed that. Judge Stark found that in fact— Well, that has to do with the plausibility thing. He made a plausibility finding. Right, well, it goes to materiality, Your Honor. So if you're looking to see if it's exceptionally weak, and you say that basically the evidence you're pointing to has zero relevance to the original judgment, then you have a high standard, grave miscarriage, and you have something that's given zero weight. So that's zero basis for making the claim, which means it is exceptionally weak. In addition, the district court found that with respect to standing, that nothing that they alleged showed that there was a Schedule A that was ever in existence that would have transferred the patents, and this came to a head at the hearing on the motion to dismiss, where the district court said after there were three iterations of what Nova contended was the relevance of the Venezuela testimony from the other case. At first, they said that you should reinterpret the contract, reinterpret the agreement based on extrinsic evidence, and we pointed out we can't do that. Then they filed an amended complaint, and they said, well, the extrinsic evidence from the other case shows that Schedule B supplement really isn't the Schedule A, and we pointed out that Venezuela's testimony did not support that because he said nothing about the Schedule. But more importantly, the unambiguous interpretation that Your Honors gave in the original Dial 1 case and the lower court was that the contract was unambiguous, so no extrinsic evidence, and it did not transfer any patents unless and until the patent showed up on the Schedule A, and there was no dispute that Dow owned the patents at the time they issued. So the district court said, since you are not challenging the interpretation of the contract, the only way you can prevail is if you can prove that the Schedule A you just showed and the Schedule D you are showing are the operative ones, and the counsel for Nova said, exactly right. This was at the hearing because the district court had noted their shifting positions, and we showed that the Schedule A they were relying on was from 2009 and could not control at the time the case was filed in 2005, and moreover, they had pled in their amended complaint that that Schedule A from 2009 was not the operative one. So under all the theories that they presented, three of them, on this standing issue, the judge found there's no plausibility whatsoever. It's zero relevance again. The court was well within its discretion, which is what we're talking about here, to find that the case was exceptionally weak with respect to both infringement, because it was completely immaterial, and with respect to standing because the testimony didn't go to the ultimate issue that the other side conceded is that they had to show there was a Schedule A that existed in 2005 that transferred the patents, and all they could rely on and all they presented to the court that the argument was a 2009 Schedule A that they agreed was not the operative one, and in fact, it didn't transfer any of the patents. So, Your Honor, I would say that if you thought there was a problem with the statement about the fact that there were less inflammatory ways to approach this, that you can still affirm completely based on the fact that the district court, in its discretion, it lived through the case, found that the case was exceptionally weak under octane fitness. And I would also say, Your Honor, I would ask you to consider that these were career-ending allegations, and I do believe there are other ways to draw people's attention before you make allegations like that. Thank you. I'll be brief. First of all, we couldn't have taken discovery. The case was over. There was no case. They suggested we could have filed a 60-B-4 motion or case. Indeed, they mentioned that, and they followed it with the words we would have lost, and we would have lost them to 61-B-2 and 3 because it was a time bar. The only option we had was 60-D-3, the fraud action. Well, suppose we agree with you on that and that the district court made a mistake in relying on the supposed impropriety of filing an independent action without seeking alternative mechanisms. Suppose we agree with you on that. Do we have to reverse here or remand in light of the fact that he found a lack of plausibility as well as finding that the manner in which the case was litigated was problematic? Your Honor, I think there are two questions here. One is whether you have to reverse or remand, and then tied to your specific questions. My point is that this case was poisoned by the district court's failure to compare the independent action filed by Nova to another independent action. It was poisoned by that. It was further poisoned. I'm trying to give you a hypothetical that assumes you lose on that. We find that his finding of lack of plausibility was sustainable. We find that he didn't make any other errors. The only error in the district court opinion on this hypothetical is that the district court said that there are other ways of approaching this that you should have followed, and that's not correct. Suppose we find that one error. What do we do? If built into your question is that you're not finding that the district court compared the action to the wrong action, and you're also not finding that using the three judges' declarations against us rather than for us, assuming you're not finding any of that, and you're only finding that the finding was plausible and the district court said we could have come to him first. You made an error in the inflammatory finding. What do we do? I think, you know, my case here today is based on the totality of circumstances, and so what I'm suggesting is that we have multiple pressure points here, and I'm suggesting that all those pressure points affected what the district court did. If you don't find half of what I'm arguing, if you don't find that the district court compared it to the wrong kind of action, if you don't find that the district court improperly and inexplicably used the three judges' declarations against us after finding that they were an extraordinary effort to make sure that we did the right thing, if you don't find those things, we have a different case. And so I'm not sure how to answer your final question other than the fact that it is our position that you should not remand, that you should reverse, because it was Dow's obligation to compare this action to another independent action. Neither they did it, nor did the district court do it, and I'm suggesting that under those circumstances, there should be a reversal, not a remand. Now beyond that, they made a couple of points about what I said at the oral argument about the 2009 Schedule A. What Mr. Nimroy has failed to mention is at the end of that discussion, I pointed out expressly, I said, the problem in this case is that all of these schedules are post-2005 filing of suit. They are all post-2005. If one is bad, they're all bad. That was the essence of the point that I made. I think you've exceeded your time. Thank you. We thank both sides and the case is submitted.